IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHINETTA MARTIN, individually and as Guardian of the Estate of C.D.C., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 14-cv-1393-MJR-SCW |
| EAST ST. LOUIS SCHOOL DISTRICT #189, ARTHUR R. CULVER, LELON SEABERRY, JR., EAU CLAIRE SHELBY, SAMUEL YOUNG, MARRIET LUCAS, as Next Friend of M.D.L., a minor, and ILETHA SUGGS, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In September 2013, C.D.C. was placed in a restricted special education program at the East Saint Louis High School. She was previously enrolled in an East Saint Louis-area high school designated for special education school students only, but that school closed after the 2012 to 2013 year. Three months after C.D.C. transitioned to the East Saint Louis High School, she was allegedly pushed into a janitor's closet by Samuel Young, another student in the special education program at the high school, and raped by M.L, a general education student at the school. In 2014, C.D.C.'s mother, Chinetta Martin, brought suit in this Court against the school district, some of its employees, and

1

C.D.C.'s attackers, claiming that the students violated state law by attacking her and that the school officials violated state and federal law by failing to protect her.

The school defendants have now moved for summary judgment, and Martin has responded. For the reasons below, the school defendants' motion for summary judgment on the federal claims is granted. The Court will decline jurisdiction over Martin's state law claims, leaving Martin free to pursue those in state court.

## Background

Before the 2013-2014 school year, many special needs high school students who lived in or around East Saint Louis, Illinois attended the James E. Williams School, a facility that was designated for special education students. That facility closed in 2013 and the special needs students assigned there were either transferred to a therapeutic day school or integrated into a new restrictive special education program housed in the eastern wing of the East Saint Louis High School, with the placement decision based on each student's needs and functioning. C.D.C., the then-sixteen-year-old daughter of Chinetta Martin, was a student at James E. Williams before it closed, and she was selected for integration into the program at East Saint Louis High School.

C.D.C. started classes at East Saint Louis High School in September 2013. The program she was placed in, commonly called the "Emotional Disabilities" program, was made up of two separate classrooms, each staffed by a special education teacher and a teacher's aide. The students in the program transitioned between those classrooms as dictated by their schedule. Many of the students in the program, including C.D.C., suffered from mild-to-moderate mental retardation, and thus were

2

suggestible and needed supervision. To increase safety and help prevent "potential conflict[s] with peers, roaming, and truancy," the special education director started the program off by ordering that the program participants be escorted between classes and that absences from class be reported to school security, who patrolled the school.

On December 16, 2013, a little over three months after C.D.C. started at East Saint Louis High School, she was allegedly raped by M.L., a general education student at the school. C.D.C. testified that she was in class watching a movie during the sixth or seventh hour of the school day. During the movie, another special education student in the Emotional Disabilities program named Young entered C.D.C.'s classroom, grabbed C.D.C.'s arm, and pulled her out of the room while C.D.C. was up from her desk near the classroom door. No one saw her being taken out of the room. Young then ushered C.D.C. to a nearby hallway in the eastern wing of the school, where a number of other students were loitering. Among those present in the hallway was M.L., a general education student at the school. According to the parties, security footage from the hallway showed C.D.C. playing with the students for a brief time. The footage then showed M.L. entering a closet off the hallway, and after that showed Young grabbing C.D.C. by the arm, pulling her down the hallway, and pushing her into the janitor's closet. C.D.C. testified that M.L. then raped her in the closet for eight minutes.

After the rape, C.D.C. returned to her classroom to get her things and try to catch the bus. One of the special education teachers asked her why she was coming back so late to get her things, and C.D.C. testified that she told her nothing about the rape.

C.D.C. missed the bus and called her mother to come pick her up. That night, she was distraught. Her mother asked her what was wrong, and she told her of the rape.

The next day Martin went to the high school with C.D.C. and her stepfather and reported the rape to Principal Lelon Seaberry, Jr., and Associate Principal Eric Harris. The parties dispute how those two reacted to Martin's report. In her brief, Martin says that the two reviewed the security tape and then said something to her that left her with the impression that no rape occurred and that the assault was just "horse playing," although the material cited for that proposition has Martin testifying that she didn't recall what Seaberry and Harris said to her after she reported the incident, and Harris testifying that he said nothing to indicate that the case involved "horse playing" alone and that no matter what the school would proceed with an investigation. Either way, one day later, officers from the East Saint Louis Police Department visited Martin's home, told Martin that someone at the school had informed police of the security footage and C.D.C.'s account, and encouraged Martin to press charges and have C.D.C. examined. She did, and Young and M.L. were ultimately charged with sexual assault. M.L. pled guilty to a lesser count and Young's charges are still pending.

On December 18, 2014, Martin filed suit in this Court concerning the events surrounding C.D.C.'s rape. She sued individually and on behalf of her daughter, and named the East Saint Louis School District #189; the school district's superintendent, Arthur Culver; the high school's principal, Lelon Seaberry, Jr.; one of the special education teachers, Eau Claire Shelby; and Young  She claimed that Young violated Illinois law by attacking her, and that the school defendants violated the Fourteenth

4

Amendment of the United States Constitution, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and Illinois law by failing to prevent her rape.  She amended her complaint once on April 6, 2015 to remove some of her requests for attorney's fees; and again on July 13, 2015 to add federal and state claims against the other special education teacher in C.D.C.'s program and state claims against M.L.  The case then proceeded to discovery.

On February 1, 2016, the school district and the named school district employees moved for summary judgment, arguing that Martin's federal claims against them aren't viable and that her state claims against them fail on immunity grounds.  Martin has responded, so the motion for summary judgment is now before the Court for review.

## Discussion

Summary judgment is proper on one or more of a party's claims if the evidence shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014).**  In evaluating whether there is a genuine issue as to a material fact, the Court must construe the facts in the light most favorable to the non-movant, and draw all legitimate inferences and resolve doubts in favor of that party.  ***Nat'l Athletic Sportswear, Inc.*, 528 F.3d 508, 512 (7th Cir. 2008).**  If after doing so no reasonable jury could find for the non-movant on her claim, summary judgment on that claim is proper; if the jury could find for the non-movant on her claim, it must proceed. ***Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994).**

Martin brings a number of state and federal claims in this case, but it makes good sense to start with her federal ones—if judgment should be granted on the federal claims, the Court might decline to hear the state ones, leaving them instead for state court. Her first federal claim is that the school officials and teachers at the East Saint Louis High School had a duty to protect C.D.C. from the rape under the substantive due process clause of the Fourteenth Amendment. This claim runs into some difficulty given the Supreme Court's rulings in *Castle Rock v. Gonzales*, **545 U.S. 748 (2005)**, and *DeShaney v. Winnebago County Department of Social Services*, **489 U.S. 189 (1989)**, which hold that the Constitution does not compel state actors to protect citizens from private parties. That kind of liability, says those cases, is legally unsound and practically unwise, despite the fact that the cases often involve sad and sympathetic facts. It is legally shaky because the Constitution is a charter of negative liberties rather than positive ones—it protects the people from the state but not "from each other," so it is an imperfect vehicle (especially when compared to state law) to press failure-to-protect claims against a state actor. *DeShaney*, **489 U.S. at 196.** It is practically ill-advised because it would almost always put unelected judges in the position of deciding government resource allocation, decisions that would be far more flexible if left to officials who are accountable to the public through the democratic process. *See id.; Dawson v. Milwaukee Hous. Auth.*, **930 F.2d 1283, 1286 (7th Cir. 1991).**

*DeShaney* suggested two exceptions to the bar against failure-to-protect claims, both related to each other but arguably distinct. The first contemplates liability when the government takes custody of a person, the thought being that the person can no

6

longer take care of himself when his freedom has been curtailed. *Stevens v. Umsted*, **131 F.3d 697, 701-02 (7th Cir. 1997).** Martin says that C.D.C.'s placement in the Emotional Disabilities program at the high school is close enough to trigger custodial protection, but custody is made of tougher stuff—highly-restrictive environments, like prisons and mental wards, are really the only environments that qualify. *DeShaney*, **489 U.S. at 200.** Schools, both general and restrictive, have some measure of come-and-go and leave some ability for students to engage in self-help, so they aren't custodial in a way that triggers a duty to protect. *E.g., Stevens*, **131 F.3d at 703-04;** *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, **972 F.2d 1364, 1372-73 (3d Cir. 1992);** *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, **909 F.2d 267, 272-73 (7th Cir. 1990).**

The second exception allows for liability when the government acts to create a danger and then doesn't do enough to ameliorate it. *Stevens*, **131 F.3d at 704-05.** These kinds of claims are difficult to make out —they exist only in "rare" and "narrow" circumstances. *Doe v. Vill. of Arlington Heights*, **782 F.3d 911, 916 (7th Cir. 2015)**. The bar is high because both *DeShaney* and *Castle Rock* involved some initial act by state actors, depending on the level of abstraction used to characterize the facts, so the elements of a state created danger claim must be a bit draconian to insure that the state-created danger exception doesn't swallow the broader rule against failure-to-protect claims. The circuits vary slightly in the elements they've set to block out exception creep: the Seventh Circuit, with some variation, requires proof of an affirmative act by the state actor that created or increased the risk to the victim, proof that the official's action proximately caused the injury, and proof that the official's conduct "shocked the

conscience." *E.g.*, *D.S. v. East Porter Co. Sch. Corp.*, **799 F.3d 793, 798-99 (7th Cir. 2015);** *King ex rel. King v. East St. Louis Sch. Dist. 189*, **496 F.3d 812, 818 (7th Cir. 2007).**

It's a stretch to say that the defendants' actions, as opposed to their inactions, created the danger here. Martin suggests that the higher-level school officials might have acted by creating the integrated program at East St. Louis, but ultimately seems to concede that her beef wasn't with the creation of the program (she says she doesn't "object" to it), and in any event that act was too removed from the assault to create liability. *Dorothy J. v. Little Rock Sch. Dist.*, **7 F.3d 729, 733 (8th Cir. 1993).** Martin also maintains that the teachers created a policy to record students' absence, but the teachers' decision to record absences alone had no impact on C.D.C.'s assault. Martin's more forceful allegations, and the ones that potentially had had a part in leading to C.D.C.'s assault, are that officials failed to lockdown the special education wing of the school and that C.D.C.'s teachers failed to abide by a school policy telling them to report absent special education students to security. The rub is that those allegations sound far more like inaction rather than action. None of the defendants locked C.D.C. in the room with her attacker, as in *Maxwell v. School District of City of Philadelphia*, **53 F. Supp. 2d 787, 793 (E.D. Pa. 1999)**; gave her attackers motive to assault her, as in *Monfils v. Taylor*, **165 F.3d 511, 520 (7th Cir. 1998)**; or detained a protector, as in *Reed v. Gardner*, **986 F.2d 1122, 1127 (7th Cir. 1993)**. They only failed to abide by a promised policy or failed to increase school security, and that kind of inaction isn't enough. *E.g.*, *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, **675 F.3d 849, 867-68 (5th Cir. 2012);**

8

*Brown v. Sch. Dist. of Philadelphia*, 456 F. App'x 88, 91 (3d Cir. 2011); *Stevens*, 131 F.3d at 705-06; *Nabozny v. Podlesny*, 92 F.3d 446, 460 (7th Cir. 1996).

There's a bigger problem with Martin's due process claim, one less about inaction and more about foreknowledge. For the defendants' conduct to have shocked the conscience, they must have acted with deliberate indifference, meaning that there must have been a substantial risk that the harm that did occur would occur, the official must have known about that risk or the risk must have been obvious, and the official must have acted with indifference towards that risk. *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 655-56 (7th Cir. 2011); *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 711 n.10 (7th Cir. 2002). Martin says that the defendants here knew enough about Young to tip them off to a risk—Young's file indicated that he had a history of improper behavior, and some school employees knew that Young was vulgar with female students and "pulled" a female student in an unspecified manner. But this evidence is too vague to point to a clear risk that Young would escalate to full-blown rape. There's no evidence showing that Young had threatened to sexually assault C.D.C. or had a history of engaging in outright sexual assault before the attack, meaning that the officials didn't have the kind of foreknowledge about him that could paint them as indifferent. *See, e.g., McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 469-70 (6th Cir. 2006) (no foreknowledge when student shot other students because school did not know or "even suspect[] that [the perpetrator] had a gun, knife or other similarly dangerous weapon with him on the day of the shooting, nor did [the student's] history of behavioral problems suggest that he would escalate" from

9

**"fists" to guns);** *Wilson ex rel. Adams v. Cahokia Sch. Dist. No. 187*, **470 F. Supp. 2d 897, 905 (S.D. Ill. 2007) (no notice when there was no history of sexual assault by perpetrator, despite fact that he was "not a model student").**

Martin seems to concede that the school's knowledge about Young was a bit vague, but she maintains that the school had a different type of knowledge that alerted them to a risk—knowledge focused on the general vulnerabilities of the special education students at the high school, as well as knowledge focused on C.D.C.'s vulnerabilities. The school knew, says Martin, that there was a risk of "potential conflict with peers, roaming, and truancy" with the special education students, and instituted a policy requiring that the students be escorted between classes and that absences from class be reported to security to help abate that risk. Once more, the school knew, from C.D.C.'s file, that she was intellectually disabled, that she needed supervision, and that she was suggestible; potentially knew, through a couple of employees, that there were vague concerns about C.D.C. being left unsupervised with male students; and potentially knew, through a guard at the school, that general students had tried to come onto the special education wing to flirt with C.D.C.

Even if all of this knowledge could be imputed to the actual defendants in this case, it still isn't enough to paint the defendants as indifferent to a substantial risk of outright rape. It's important to remember that deliberate indifference is synonymous with recklessness, and recklessness turns on the depth of the risk: if an official has knowledge about a specific risk to a particular victim; or knowledge about a specific perpetrator's tendency to attack; or maybe even knowledge about a victim's particular

10

vulnerability to a specific kind of harm, the failure to protect might cross the line into deliberate indifference. *See Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004), *overruled on other grounds by Fitzgerald v. Barnstable Sch. Cmty.*, 555 U.S. 246 (2009); *Martin*, 295 F.3d at 711 n.10. This case doesn't involve knowledge of any of those types, though. It might fall into the last category if school officials knew that C.D.C. had a history of being sexually assaulted or even being threatened with sexual assault, but all the school knew here was that C.D.C. was suggestible, needed supervision, and was the target of flirtation, and nothing there points to a substantial risk of outright rape. At the end of the day, Martin doesn't cite one case where knowledge about a victim's generalized risk of harm was enough to make out a constitutional claim, and the cases the Court has found on its own suggest otherwise—there isn't the kind of foreknowledge required for deliberate indifference when an official only has knowledge about a non-specific, indefinite, or non-particularized danger. *See, e.g., Dixon v. Alcorn Cnty. Sch. Dist.*, 499 F. App'x 364, 367-68 (5th Cir. 2012) (no constitutional claim where victim was "merely one student among many who faced a generalized risk resulting from the school's attempt to integrate a mentally disabled child into a normal school environment"); *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009) (risk must be "familiar and specific" and the defendant must choose "not to heed" it); *Delgado*, 367 F.3d at 672 (knowledge of a risk "in a general sense" usually not enough to make out deliberate indifference); *Dorothy J.*, 7 F.3d at 733 (non-particularized "indefinite" risk insufficient to make out constitutional liability).[1]

---

[1] To be sure, a number of courts have rejected liability in the special education context

The § 1983 claims against the school officials must fail for want of notice, and because those claims fail, so too must the § 1983 claim against the district.  *King*, **496 F.3d at 819.**

Martin has also brought a claim against the school district under Title IX of the Education Amendments of 1972, which states that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program receiving federal assistance.  **20 U.S.C. § 1681(a).** While Title IX does not mention a private cause of action, the Supreme Court has held that such a right is implied, *Cannon v. Univ. of Chicago*, **441 U.S. 677, 717 (1979)**, and litigants pursuing those claims can seek money damages, *Franklin v. Gwinnett Cnty. Pub. Sch.*, **503 U.S. 60, 76 (1992)**.  That said, in light of notice requirements for statutes passed under the Spending Clause, the Supreme Court has set a high bar for plaintiffs seeking to hold schools liable for student-on-student harassment.  Those claims are viable only when the harassment was sexually discriminatory, when the school had actual knowledge of the harassment, when the harassment was so severe, pervasive, and objectively offensive that it deprived the victims of access to education; and when the officials were deliberately indifferent to the harassment.  *Davis v. Monroe Cnty. Bd. of Educ.*, **526 U.S. 629, 650 (1999);** *Doe v. Galster*, **768 F.3d 611, 617 (7th Cir. 2014).**

The actual knowledge and deliberate indifference requirements for Title IX claims are similar to the knowledge and state-of-mind requirements for substantive due

---

without proof of a threat from a specific student or at least proof that the attackers had a history of engaging in sexual assault, and the victims in those cases had general vulnerabilities based on their disabilities.  *See, e.g., Swanger v. Warrior Run Sch. Dist.*, **No. 4:11-cv-894, 2015 WL 5830068, at \*13 (M.D. Pa. Sept. 30, 2015);** *Morgan v. Bend-La Pine Sch. Dist.*, **No. CV-07-173, 2009 WL 312423, at \*13 (D. Ore. Feb. 6, 2009).**

process claims under the Fourteenth Amendment, so a lack of foreknowledge can spell doom for both. *Davis v. Carmel Clay Sch.*, **570 F. App'x 602, 605 (7th Cir. 2014).** That is the case here. Even if all of the information presented by Martin was imputed to the district, that information didn't put the school on the kind of notice needed to make it liable under Title IX. To be liable under Title IX, the school must know of misconduct that would create risks "so great that they are almost certain to materialize if nothing is done." *Hansen v. Bd. of Tr. of Hamilton Southeastern Sch. Corp.*, **551 F.3d 599, 606 (7th Cir. 2008).** There is no evidence indicating that the perpetrators here had a history of outright sexual assault, and as the Court already said above, what the school knew about C.D.C. here doesn't point to a clear risk that would be raped by another student. Summary judgment in favor of the school district on the Title IX claim is proper.

Martin's next two claims are brought under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Section 504 states that no person with a disability shall be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of her disability, **29 U.S.C. § 794**, while Title II of the Americans with Disabilities Act includes a similar prohibition, this one directed at state and local entities regardless of whether they receive federal funding, **42 U.S.C. § 12132**. The parties agree that the two disability claims are analyzed the same, and the law backs up their understanding. *See Foley v. Lafayette, Ind.*, **359 F.3d 925, 928 (7th Cir. 2004).** That said, the parties dispute what kind of analytical framework should apply to student-on-student disability harassment claims under the Rehabilitation Act and the

13

American with Disabilities Act. The answer seems fairly straightforward. The statutory language in Title IX used to support student-on-student sexual harassment claims is quite similar to the companion language in the Rehabilitation Act and the Americans with Disabilities Act, meaning that a variant of the *Davis* test should apply to student-on-student disability harassment claims. *E.g., S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, — F.3d —, 2016 WL 1391787, at *4 (4th Cir. Apr. 8, 2016); *Estate of Lance v. Lewisville Ind. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014).

A student making out a claim under those two statutes, then, must show that she was an individual with a disability, that she was harassed based on her disability, that the harassment was sufficiently severe or pervasive that it altered the condition of her education, that the school knew about the harassment, and that the school was deliberately indifferent to the harassment. *Lance*, 743 F.3d at 996. Martin's claim trips over a number of these requirements. For one, Martin has offered no evidence whatsoever to suggest that C.D.C. was assaulted because of her cognitive disabilities. More fundamentally, there's nothing to suggest that the school had any knowledge that C.D.C. was being harassed based on her disability or that there was a substantial risk that she would be harassed based on her disability by Young, M.L., or anyone else. The Court must enter summary judgment as to Martin's disability claims.

That only leaves Martin's pending state claims in this action—for willful and wanton misconduct against the school officials and for battery and infliction of emotional distress against Young and M.L. Because all of the federal claims will be dismissed, it is within the Court's discretion to keep the state claims here or decline to

exercise jurisdiction and dismiss them without prejudice to their being refiled in state court. See **28 U.S.C. § 1367(c)(3);** *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, **551 F.3d 599, 607 (7th Cir. 2008).** Martin has asked for the latter, and given the number of state immunity issues bandied back and forth between the parties in the summary judgment briefing, the Court agrees that a jurisdictional dismissal is the wiser course. *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, **593 F.3d 507, 513 (7th Cir. 2010).**

## Disposition

If C.D.C. was sexually assaulted, and the Court must assume that she was at this stage, her assault was an undeniable tragedy, and her case tugs at the heartstrings. Judges and lawyers, being human, are moved by sympathy to try to craft a way for C.D.C. and her mother to receive relief for the harm allegedly inflicted, but that sympathy is an insufficient basis for allowing recovery based on a theory inconsistent with the law. The school defendants' motion for summary judgment (Doc. 72) is **GRANTED** as to the federal claims, and the **CLERK** is **DIRECTED** to enter judgment in favor of the school defendants and against Martin on those claims. The Court **DECLINES** to exercise supplemental jurisdiction as to the state law claims. Those claims are **DISMISSED without prejudice**, and Martin is free to pursue them in state court. The parties' pending motions *in limine* (Docs. 88 & 91) are **DENIED** as **MOOT**.

IT IS SO ORDERED.

DATED: April 29, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**